IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO BRISENO, | 1:11-cv-01988-AWI-SAB |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

Plaintiff Ricardo Briseno ("Plaintiff") filed a complaint seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits (Title II) and Supplemental Security Income disability benefits (Title XVI) under the Social Security Act.  (ECF No. 1.)  The matter was submitted to the undersigned magistrate judge for findings and recommendations to the District Court.  For the reasons set forth below, the undersigned recommends that the ALJ's decision be reversed and that this action be remanded to the ALJ for further proceedings consistent with this opinion.

/ / /

/ / /

/ / /

/ / /

# I.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff applied for Supplemental Security Income benefits and disability insurance benefits on December 19, 2007.  (AR 139-150.)  Plaintiff claimed disability benefits based upon Hepatitis B/C, diabetes, vision problems, and pain and swelling in his hands, left knee and leg, and left shoulder.  (AR 169.)  Plaintiff's applications for benefits were denied, both initially and after reconsideration.  (AR 85-93.)  Plaintiff was deemed not to be disabled at any time between the alleged onset date (December 10, 2001) through the date of current determination (AR 78).  Plaintiff requested a hearing before an Administrative Law Judge.  (AR 96.)  Plaintiff appeared and testified at a hearing held before ALJ Timothy S. Snelling (hereinafter referred to as "the ALJ") on February 11, 2010.  (AR 13.)  The ALJ denied benefits in a decision dated June 11, 2010.  (AR 10-29.)  The Appeals Council denied Plaintiff's request for review on September 28, 2011.  (AR 1-3.)

### A.    Plaintiff's Hearing Testimony

Plaintiff appeared and testified at two hearings before the ALJ: on October 15, 2009 and February 11, 2010.  (AR 13.)  Plaintiff appeared without an attorney or other representative.  (AR 13.)

Plaintiff testified that he would like to have his mental examination redone because he felt it was not done properly the first time.  (AR 67.)  Plaintiff further stated that he was "not disagreeing on the part that [he was] not physically handicapped ... [his] problem is emotional torture and stuff I went through and [is] still going through today."  (AR 68.)  The October 15, 2009 hearing was continued to give Plaintiff an opportunity to find legal counsel.  (AR 76-77.)

At the continued hearing on February 11, 2010, Plaintiff was still unrepresented and the hearing went forward.  (AR 32-34.)  Plaintiff testified that his disability "is mostly emotional and mental," but also included Hepatitis C and diabetes.  (AR 38.)  Plaintiff also had difficulty

---

[1]Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record).  Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript.  (See ECF No. 12.)

1    finding employment due to his long prison record.  (AR 38.)

2           Plaintiff has been in and out of prison since 1982.  (AR 38-39.)  Plaintiff was convicted

3    of rape in 1982.  (AR 40-42.)  Prior to pleading guilty to the rape offense, Plaintiff skipped bail

4    and was a fugitive for approximately six years before he was discovered.  (AR 41-42.)  While

5    serving time for the rape conviction, Plaintiff received his GED, worked at a bakery, and took

6    auto body educational courses.  (AR 42-43.)  Plaintiff was paroled in 1984 or 1985.  (AR 42.)

7           In 1988 or 1989, Plaintiff was convicted of being an accessory to a robbery.  (AR 43.)

8    Plaintiff received parole in 1993.  (AR43.)  Plaintiff was also imprisoned at some point in time

9    for possession of cocaine, but the date of the possession conviction is unclear.  (AR 44.)

10          Plaintiff has been attacked by others in his hometown of Empire, California.  (AR 45.)

11   On one occasion, Plaintiff was attacked by an individual with a baseball bat.  (AR 45.)  Plaintiff

12   stated that the attacker accused Plaintiff of being a child molester.  (AR 45.)  Plaintiff testified

13   that he was not a child molester and that the attacker may have misinterpreted Plaintiff's status

14   as a registered sex offender from his prior rape conviction, which involved a 23-year-old.  (AR

15   45.)  Plaintiff believed this attack occurred in 1995 or 1996.  (AR 46.)

16          Plaintiff was attacked by another individual in Empire who sucker punched Plaintiff and

17   knocked some of Plaintiff's teeth out.  (AR 46.)  Plaintiff believed this attack occurred in 2007

18   or 2008.  (AR 46.)  Plaintiff believes that the second attack was also related to his earlier rape

19   conviction and the mis-perception that Plaintiff is a child molester.  (AR 47.)

20          Plaintiff testified that neither attacker was prosecuted.  (AR 46-47.)  Plaintiff also

21   testified that other people in his town call Plaintiff a child molester and tell him to stay out of

22   town.  (AR 47-48.)  Plaintiff described another incident where a man approached Plaintiff while

23   Plaintiff was in his truck, called Plaintiff a child molester, and tried to remove Plaintiff from his

24   truck before Plaintiff took off.  (AR 57.)  Plaintiff testified that he cannot move out of town

25   because he has no means of moving and all his family is in the area, including his son and three

26   grandchildren.  (AR 48.)

27          Plaintiff currently lives with his wife and his parents in a home owned by his parents.

28   (AR 49.)  Plaintiff's mother is 78 and Plaintiff's father is 75.  (AR 49.)  Plaintiff helps take care

1    of his parents and helped take care of an uncle, who was paralyzed on one side, until the uncle

2    passed away.  (AR 49.)  Plaintiff's father had surgery on one arm and lost the use of that arm.

3    (AR 50.)  Plaintiff helps with household chores such as mowing the lawn, fixing things around

4    the house, painting, and other activities that his father is unable to do.  (AR 50.)  Plaintiff also

5    works on his car or truck and does woodwork.  (AR 53.)

6          Plaintiff was caught with meth sometime around 2009 but avoided serving time by

7    completing addiction treatment.  (AR 53-56.)  Plaintiff also used meth between 2004 and 2009

8    on an average of two or three times a month.  (AR 56.)

9          Plaintiff testified that he stays home approximately 75 percent of the time because of

10   fear of being attacked and accused of being a child molester.  (AR 57-58.)  The other 25 percent

11   of the time outside the house is spent at his grandchildren's sporting events and with his niece's

12   children.  (AR 59.)  Plaintiff's grandchildren and niece's children live in Turlock.  (AR 60.)

13         Near the end of the hearing, Plaintiff affirmed that the basis of his claim for benefits

14   focused more on the mental and emotional aspects of his disability, as opposed to the physical

15   aspects:

16              ALJ:          And the gist of your claim is, it sounds to me like
                              the gist of your claim is not really physical
17                            limitations but mental.
                 Plaintiff:    It's more mental and emotional, yeah.
18

19   (AR 58.)

20         **B.      Plaintiff's Medical Records**

21         On June 29, 2005, Plaintiff received treatment after he was hit on his left hand with a

22   baseball bat.  (AR 249.)  Plaintiff reported pain and swelling in his hand and numbness in his

23   fingers.  (AR 249.)  Soft tissue swelling was reported, but no fracture.  (AR 253.)

24         On March 20, 2006, Plaintiff sought medical treatment after twisting his left ankle after

25   stepping off his porch.  (AR 238-248.)  Plaintiff's physical exam showed that his calf and ankle

26   were swollen, but with normal range of motion.  (AR 238.)  X-rays showed no fractures and

27   Plaintiff was diagnosed with a left ankle sprain and left knee effusion.  (AR 239.)

28   / / /

4

1    On March 20, 2008, Plaintiff received treatment after he was attacked.  (AR 256.)

2    Plaintiff reported that his mouth would not stop bleeding, that several teeth were missing or

3    loose, and felt like his jaw may be broken.  (AR 256.)  Plaintiff eventually decided to leave

4    without further treatment to see his own dentist.  (AR 258.)

5    On May 14, 2008, Plaintiff was examined by a non-treating physician, Dr. Miguel

6    Hernandez.  (AR 276.)  Dr. Hernandez diagnosed Plaintiff with Hepatitis C, Type-2 Diabetes,

7    vision problems, left shoulder rotator cuff syndrome, history of right elbow injury, mental

8    stress, and depression.  (AR 279.)  Dr. Hernandez found that Plaintiff could lift and carry 20

9    pounds on an occasional basis and 10 points on a frequent basis.

10   On June 5, 2008, Dr. Pamela V. Ombres authored Plaintiff's Physical Residual

11   Functional Capacity Assessment.  (AR 281-285.)  Dr. Ombres concurred with Dr. Henandez's

12   assessment that Plaintiff could occasionally lift and carry 20 points and frequently lift and carry

13   10 pounds.  (AR 282.)  Dr. Ombres also concluded that Plaintiff was "limited" in "reaching all

14   directions," specifically commenting "[n]o overhead w/L arm."  (AR 283.)  Dr. Ombres further

15   stated that Plaintiff's "allegations are partially credible."  (AR 285.)

16   On June 20, 2008, Plaintiff was seen by Dr. Stefan Lampe.  (AR 289-290.)  Plaintiff

17   complained of pain in his knee and right hand.  (AR 289.)  Plaintiff also complained of

18   depression and fear of leaving the house because he was attacked.  (AR 289.)  Plaintiff

19   informed Dr. Lampe that he last worked as a truck driver, but stopped in June 2008 after three

20   weeks because his knee gave out.  (AR 289.)  Dr. Lampe's diagnosis was that Plaintiff had

21   "depressive symptoms that could benefit from treatment."  (AR 290.)  Dr. Lampe gave Plaintiff

22   a Global Assessment of Functioning ("GAF") score of 50.  (AR 290.)

23   On July 25, 2008, Dr. R. Paxton completed a Mental Residual Functional Capacity

24   Assessment for Plaintiff.  (AR 302-304.)  Plaintiff was deemed "Not Significantly Limited" in

25   all categories except for "[t]he ability to understand and remember detailed instructions"

26   (Moderately Limited), "[t]he ability to carry out detailed instructions" (Moderately Limited),

27   and "[t]he ability to interact appropriately with the general public" (Moderately Limited).  (AR

28   302-303.)  Dr. Paxton commented that Plaintiff "has the cognitive and concentrative capacity to

1  understand and remember simple level tasks and instructions.  No adaptive limitations.  Able to

2  work in a non public setting." (AR 304.)

3      On December 2, 2008, Dr. Sadda V. Reddy completed a case analysis and affirmed

4  Plaintiff's "light" RFC.  (AR 315-316.)  Dr. Reddy also commented that, for Plaintiff's

5  disability insurance benefits (Title II), there was insufficient evidence of disability between the

6  alleged onset date of December 10, 2001 and the date last insured, March 31, 2005.  (AR 316.)

7      On March 14, 2010, Dr. Manolito Castillo authored an Adult Psychiatric Evaluation

8  concerning Plaintiff.  (AR 324-326.)  Dr. Castillo diagnosed Plaintiff with generalized anxiety

9  disorder and polysubstance dependence, in full sustained remission.  (AR 326.)  Dr. Castillo

10 gave Plaintiff a GAF score of 71.  (AR. 326.)  Dr. Castillo remarked that Plaintiff "did well on

11 assessment.  As a result, I am unable to identify any significant mental limitations at present."

12 (AR 326.)

13      **C.    The ALJ's Findings**

14      The ALJ concluded that Plaintiff was not disabled within the meaning of the Social

15 Security Act between December 10, 2001 through the date of his decision.  (AR 13.)  The ALJ

16 made the following findings:

17      1.    Plaintiff meets the insured status requirements of the Social Security Act through

18            March 31, 2005.  (AR 15.)

19      2.    Plaintiff has not engaged in substantial gainful activity since December 10,

20            2001, the alleged onset date of Plaintiff's disability.  (AR 15.)

21      3.    Plaintiff has the following medically severe combination of impairments:

22            hepatitis C, Type-2 diabetes, history of left knee medial meniscus tear and left

23            shoulder rotator cuff syndrome, depression, generalized anxiety disorder and

24            history of polysubstance dependence in full sustained remission.  (AR 15.)

25      4.    Plaintiff does not have an impairment or combination of impairments that meets

26            or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart

27            P, Appendix 1.  (AR 16.)

28 / / /

6

5.   Plaintiff has the residual functional capacity to perform medium work, but can reach no more than frequently in all directions including overhead and public contact has to be limited to no more than occasionally.  (AR 17.)

6.   Plaintiff is capable of performing past relevant work as an auto body repair technician and HVAC installer.  (AR 22.)

With respect to his weighing of the evidence, the ALJ gave substantial weight to the psychiatric evaluations of Plaintiff performed by Dr. Stefan Lampe and Dr. Manolito Castillo. (AR 21.)  The ALJ gave limited weight to the opinions of Dr. Miguel Hernandez and the State agency medical consultants.  (AR 21.)  The ALJ noted that Plaintiff's testimony regarding his activities of daily living show that his condition has improved and he is less limited than determined by Dr. Hernandez.  (AR 21.)

The ALJ granted little probative weight to Plaintiff's testimony because the medical evidence did not support Plaintiff's allegations as to the intensity, persistence and limiting effects of his impairments.  (AR 22.)

In addition to determining that Plaintiff was not disabled because Plaintiff could perform past relevant work, the ALJ made an "alternative" basis for his conclusion that Plaintiff was not disabled.  The ALJ determined that, given Plaintiff's medium work RFC, Plaintiff would be "not disabled" under framework provided by the Medical-Vocational Rules, a.k.a. "the grids," found in 20 C.F.R. Part 404, Subpart P, Appendix 2.  (AR 22.)  The ALJ reasoned that reliance on the grids was appropriate because Plaintiff's non-exertional limitations have little effect on the occupational base of unskilled medium work, as supported by Social Security Ruling 85-15.  (AR 23.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  The Court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will

be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

### III.

### DISCUSSION AND ANALYSIS

A claimant is considered "disabled" under the Social Security Act if: (1) he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months, and (2) the impairment is of such sevirity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 1382c(a)(3)(A) and (B); see also Hill, 698 F.3d at 1159.  In order to determine whether a claimant is disabled, the ALJ performs the five-step sequential analysis required under 20 C.F.R. § 404.1520(a)(4)(i)-(v).  See also Hill, 698 F.3d at 1159.

In this case, Plaintiff challenges (A) the ALJ's determination at step 4 of the analysis that Plaintiff possessed a residual functional capacity ("RFC") to perform medium work, and (B) the ALJ's failure to properly consider Plaintiff's global assessment of functioning ("GAF") during steps 4 and 5 of his determination.

### A.   Plaintiff's RFC of "Medium Work" Was Not Supported By The Evidence

Plaintiff contends that the ALJ erred in determining that Plaintiff had the RFC to perform medium work.  (Pl.'s Brief 3:18-5:13.)  Plaintiff notes that all three physicians on record opined that Plaintiff had the RFC to perform light work.  Accordingly, the issue is

whether the ALJ erred by failing to adopt as conclusive the physicians' opinions regarding Plaintiff's RFC.

### 1.   Legal Standards Pertaining to the Weight to be Given to a Physician's Opinions

With respect to the proper weight that should be given to a physician's opinion:

> Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non examining physicians).

Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

This case involves the opinions of one examining physician and two non-examining physicians, who all opined that Plaintiff possessed an RFC to perform light work. "The opinion of an examining physician is ... entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)). "In order to reject an examining physician's opinion, 'the ALJ has to give clear and convincing reasons.... Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.'" Hill, 698 F.3d at 1159-60 (quoting Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298-99 (9th Cir. 1999).

### 2.   No Evidence Of Any Inconsistencies Between The Light Work RFC and the Medical Record

Defendant argues that it was proper for the ALJ to disregard the opinions of three physicians because their findings were not supported by the record as a whole. (Def.'s Resp. 10:1-11:3.)  In support of this argument, Defendant notes that Dr. Hernandez "noted no tenderness to palpation and full range of motion in [Plaintiff's] shoulder" and that, aside from "Plaintiff's subjective complaints of pain and limitation, the physical examination was near normal with minimal abnormalities." (Def.'s Resp. 10:11-15.)

However, Defendant merely isolates and quotes "normal" sounding passages from Plaintiff's medical record and ignores the portions of the medial record which may be

1   consistent with the physicians' opinions.  The medical record also includes objective data

2   regarding the range of motion in Plaintiff's shoulder, elbow, wrists and fingers, Plaintiff's

3   motor strength results, Plaintiff's grip strength results using the "Jamar dynamometer,"

4   Plaintiff's reflexes, and other esoteric medical data which is largely meaningless to the Court in

5   the absence of interpretative testimony from qualified experts.  Since there are no opinions

6   which contradict the three physicians' light work RFC determination, the Court finds that there

7   is no substantial evidence supporting Defendant's contention that the light work RFC was

8   inconsistent with Plaintiff's clinical examination results.

9           **3.    No Evidence Of Any Inconsistencies Between The Light Work RFC**

10                  **and Plaintiff's Activities of Daily Living**

11          Defendant and the ALJ found that the light work RFC was inconsistent with Plaintiff's

12  testimony regarding his activities of daily living, which included taking care of personal

13  hygiene, helping with household chores (such as washing the dishes, vacuuming, sweeping and

14  cooking), yard work, taking care of elderly parents, working on his truck, woodwork and

15  fishing.  (AR 16, 20-21.)

16          However, the Court finds that none of these activities necessarily conflict with the

17  physicians' assessment of Plaintiff's limitations nor do they necessarily conflict with Plaintiff's

18  subjective testimony regarding his impairment.  The activities could conflict with a light work

19  RFC, but the record is not sufficiently developed to reach that conclusion.  For example, if the

20  yard work, auto work, wood work and fishing did not involve lifting or carrying 20 pounds,

21  there would be no conflict.  Plaintiff was never asked and never testified as to performing any

22  particular task that involved lifting or carrying more than 20 pounds.

23          Moreover, Dr. Hernandez's report indicates that he was aware that Plaintiff was able to

24  perform activities of daily living such as dressing, bathing and light duties around the house.

25  (AR 277.)  Dr. Ombres was aware that Plaintiff performed light housekeeping and went fishing.

26  (AR 286-287.)  Accordingly, it appears that the physicians were largely aware of Plaintiff's

27  activities of daily living when they provided Plaintiff with a light work RFC.  Accordingly, the

28  Court finds that Plaintiff's professed activities of daily living do not constitute substantial

1   evidence warranting the rejection of the physicians' opinions in this case.

2           **4.      Plaintiff's Lack of Credibility Did Not Support Rejection Of The**

3                   **Physicians' Opinions**

4           Defendant argues that the ALJ properly made an adverse credibility finding with respect

5   to Plaintiff's subjective testimony.  (Def.'s Resp. 11:4-13:11.)  However, neither the Defendant

6   nor the ALJ explain how Plaintiff's credibility (or lack thereof) impacts the veracity of three

7   physicians' opinions regarding Plaintiff's RFC.

8           Notably, Dr. Hernandez's assessment does <u>not</u> appear to be based solely on Plaintiff's

9   subjective reports of his own physical impairment.  Dr. Hernandez's report includes objective

10  findings and observations regarding Plaintiff's appearance, measurements of Plaintiff's range of

11  motion, and measurements of Plaintiff's motor strength and grip strength.  (AR 276-280.)

12  Moreover, Dr. Hernandez, the examining physician, <u>twice</u> noted that his diagnosis was "[b]ased

13  on ... objective findings" and, therefore, not based upon Plaintiff's subjective statements.  (AR

14  279-280.)  Notably, Dr. Ombres expressed some reservations about Plaintiff's credibility, yet

15  nonetheless affirmed the "light work" RFC.  (<u>See</u> AR 285 ("the claimant's allegations are

16  partially credible").)

17          Since the physicians' opinions were based upon objective medical findings and the

18  physicians took into account doubts regarding Plaintiff's credibility, the Court finds that

19  Plaintiff's lack of credibility does not constitute substantial evidence warranting the rejection of

20  the physicians' opinions regarding Plaintiff's light work RFC.

21          Based on the foregoing, the Court finds that the ALJ erred in concluding that a medium

22  work RFC was appropriate when all three physicians to opine on the issue concluded that a

23  light work RFC was appropriate for Plaintiff.

24      **B.      The Failure to Expressly Address Plaintiff's GAF Was Not Erroneous**

25          Plaintiff's second argument is that the ALJ's analysis was flawed because it failed to

26  properly consider Plaintiff's global assessment of functioning, which was 50 according to Dr.

27  Stefan Lampe.  (Pl.'s Brief 5:25-6:5.)  Plaintiff notes that the ALJ failed to "include the global

28  limitations in the RFC or in any hypothetical questions to a [vocational expert]."  (Pl's Brief

6:2-3.)

The failure to specifically address GAF scores does not constitute legal error. McFarland v. Astrue, 288 Fed.Appx. 357, 359.  "[A]n ALJ is not required to give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to mention a GAF score does not render his assessment of a claimant's RFC deficient."  Chavez v. Astrue, 699 F. Supp. 2d 1125, 1135 (C.D. Cal. 2009).  Irrespective of the failure to explicitly address the GAF scores, the ALJ's decision was proper so long as it was supported by substantial evidence in the record.  McFarland, 288 Fed. Appx. at 359.

Here, the ALJ gave substantial weight to the opinions of both Dr. Castillo and Dr. Lampe.  Although the ALJ did not explicitly address Plaintiff's GAF score from Dr. Lampe, the ALJ's recitation of Dr. Lampe's findings and assessment was accurate.  Plaintiff argues that "[t]he GAF 50 would seem to preclude all work activity, or would at least require vocational expert testimony."  (Pl.'s Brief 5:26-26.)  However, Plaintiff provides no authority for this proposition.  Contrary to Plaintiff's argument, a GAF score is not determinative of a disability finding or a particular RFC level.  See Wickramasekera v. Astrue, No. CV 09-449-TUC-HCE, 2010 WL 3883241, at *23 (D. Ariz. Sept. 29, 2010) (GAF scale does not have direct correlation to severity requirements in Social Security Administration's mental disorder listings); Ramos v. Barnhart, 513 F. Supp. 2d 249, 261 (E.D. Penn. 2007) ("Clinicians use a GAF scale to identify an individuals' overall level of functioning, and a lower score 'may indicate problems that do not necessarily relate to the ability to hold a job.'").

In other words, nothing in the record suggests that the ALJ "rejected" the GAF score provided by Dr. Lampe.  Dr. Lampe stated that Plaintiff "may have some difficulty relating and interacting with supervisors and co-workers," "can understand, remember and carry out simple as well as more technical instructions," "may have difficulty dealing with the public," and "is able to maintain concentration and attention for two-hour increments."  (AR 290.)  Dr. Lampe further opined that, "[w]hether [Plaintiff] could withstand the stress and pressures associated with an eight-hour workday on an ongoing basis would depend on the setting."  (AR 290.) Presumably, the ALJ took Dr. Lampe's opinions into account when concluding that Plaintiff's

1    public contact should be limited to no more than occasionally.  (*See* AR 17.)

2          Moreover, Dr. Lampe opined that Plaintiff's condition should improve within three

3    months with treatment.  (AR 290.)  Although Plaintiff did not receive treatment, the ALJ could

4    have interpreted Plaintiff's increased GAF score of 71 from Dr. Castillo (one year and eight

5    months after Dr. Lampe's evaluation) as consistent with Dr. Lampe's opinion that Plaintiff's

6    condition should improve.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) ("When

7    the evidence can rationally be interpreted in more than one way, the court must uphold the

8    Commissioner's decision.") (citing Aukland v. Massanari, 257 F.3d 1033, 134-35 (9th Cir.

9    2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)).

10          Accordingly, the Court finds that the ALJ did not err in his treatment of Plaintiff's GAF

11   score.

12          **C.      The ALJ's Alternative Bases for His Findings**

13          The ALJ also set forth an alternative basis for his findings.  The ALJ determined that,

14   given Plaintiff's medium work RFC, Plaintiff would be "not disabled" under framework

15   provided by the Medical-Vocational Rules, a.k.a., "the Grids," found in 20 C.F.R. Part 404,

16   Subpart P, Appendix 2.  (AR 22.)  The ALJ also reasoned that Plaintiff's non-exertional

17   limitations would have little effect on the number of jobs that could be performed by Plaintiff,

18   given his "medium work" RFC.

19          The ALJ erred in relying upon the grids because reliance upon the grids is only

20   appropriate if the grids "completely and accurately represent a claimant's limitations."  Tackett

21   v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  Non-exertional impairments, such as pain

22   postural limitations, or environmental limitations, may make reliance on the grids improper.  Id.

23   at 1101-1102.

24          Here, Plaintiff suffered from two non-exertional limitations: (1) Plaintiff can reach no

25   more than frequently in all directions including overhead and (2) Plaintiff's public contact has

26   to be limited to no more than occasionally.  The ALJ cited Social Security Ruling 85-15 for the

27   proposition that a limitation to frequent reaching does not eliminate a large number of

28   occupations a person could otherwise do.  (AR 23.)  However, Social Security Ruling 85-15

1    does not support this proposition.  Moreover, even if true, it would not be conclusive in

2    Plaintiff's case, since the combination of <u>both</u> his non-exertional limitations would need to be

3    considered, not just Plaintiff's reaching limitation.  Accordingly, the ALJ's alternative basis for

4    his determination was erroneous.

5        **D.    <u>Remand</u>**

6        Since substantial evidence does not support the ALJ's RFC determination or the step

7    four and five conclusions, the Court may remand this case either for additional evidence and

8    findings or for an award of benefits.  42 U.S.C. § 405(g); <u>McCartey v. Massanari</u>, 298 F.3d

9    1072, 1076 (9th Cir. 2002).  The Court may direct an award of benefits if the record has been

10   fully developed and further administrative proceedings would serve no useful purpose.

11   <u>McCartey</u>, 298 F.3d at 1076.

12       Here, remand is appropriate because the record is not sufficiently developed to reach a

13   conclusion as to whether an award of benefits is appropriate.  Upon remand, it is possible that

14   additional evidence is entered into the record supporting a medium work RFC, or it is possible

15   that the Plaintiff will be found to be "not disabled" even under a light work RFC.  <u>See Tich</u>

16   <u>Pham v. Astrue</u>, 695 F. Supp. 2d 1027, 1033 (C.D. Cal. 2010) (remand is appropriate if

17   enhancement of the record would be useful).

18                                **IV.**

19               **<u>CONCLUSIONS AND RECOMMENDATIONS</u>**

20       Based upon the foregoing, the Court finds that the ALJ's decision with respect to

21   Plaintiff's RFC of medium work is not supported by substantial evidence.  Accordingly, the

22   Court RECOMMENDS that the ALJ's decision should be REVERSED and that this case be

23   REMANDED to the ALJ for further proceedings consistent with this opinion.

24       These findings and recommendations will be submitted to the Honorable Anthony W.

25   Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days after

26   being served with these findings and recommendations, the parties may file written objections

27   with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

28   and Recommendations."  The parties are advised that failure to file objections within the

14

specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951

F.2d 1153 (9th Cir.1991).

     IT IS SO ORDERED.

**Dated:**  <u>**January 22, 2013**</u>         <u>   **/s/ Stanley A. Boone**   </u>
                                                 UNITED STATES MAGISTRATE JUDGE